# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-01494-COA

**WARREN TAYLOR**                                                                      **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                               **APPELLEE**

DATE OF JUDGMENT:               10/02/2014
TRIAL JUDGE:                    HON. JOHN HUEY EMFINGER
COURT FROM WHICH APPEALED:      MADISON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:         THOMAS JON-WILLIAM BELLINDER
ATTORNEY FOR APPELLEE:          OFFICE OF THE ATTORNEY GENERAL
                                BY: JEFFREY A. KLINGFUSS
NATURE OF THE CASE:             CIVIL - POST-CONVICTION RELIEF
TRIAL COURT DISPOSITION:        DENIED AND DISMISSED MOTION FOR
                                POST-CONVICTION RELIEF
DISPOSITION:                    AFFIRMED – 12/01/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., MAXWELL AND FAIR, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1.     Warren Taylor filed a motion for post-conviction relief (PCR) in the Circuit Court of

Madison County, alleging ineffective assistance of counsel and insisting that his guilty pleas

were not freely and voluntarily entered.  The circuit court denied the motion, and Taylor

appeals, raising the same issues.  Finding no error, we affirm.

FACTS

¶2.     Taylor was indicted for conspiracy to sell cocaine, sale of cocaine, and tampering with

physical evidence.  He was later arrested and placed in the custody of the Madison County

Detention Center, where he was attacked by another inmate. During the attack, Taylor sustained injuries to two of his fingers on his left hand, and he was prescribed Lortab to treat the pain. Days after the attack, Taylor signed a petition in which he disclosed his intent to enter guilty pleas to the sale of cocaine and tampering with physical evidence. During Taylor's plea hearing, the circuit judge accepted the guilty pleas and sentenced him to serve thirty years in the custody of the Mississippi Department of Corrections. After the imposition of his sentence and after he retained new counsel, Taylor filed his PCR motion, which, as stated, the circuit court denied, resulting in this appeal.

DISCUSSION

¶3.     The standard of review of a trial court's denial or dismissal of a PCR motion is well-settled: "[W]e will only disturb the trial court's factual findings if they are clearly erroneous; however, we review the trial court's legal conclusions under a de novo standard of review." *Purnell v. State*, 126 So. 3d 949, 951 (¶4) (Miss. Ct. App. 2013) (citing *Hughes v. State*, 106 So. 3d 836, 838 (¶4) (Miss. Ct. App. 2012)).

    *I.      Ineffective Assistance of Counsel*

¶4.     Taylor alleges that before the plea hearing, he ingested a Lortab pill that rendered him incoherent. He also alleges that although he informed his trial counsel that he had taken the pill, his trial counsel ignored his complaints and executed his plea petition against his will. Taylor contends that

> had [his trial counsel] delved further into [his] claims of physical assault . . . and asserted the intervening circumstances of [him] having been under the

2

influence of [Lortab] at the time of the guilty[-]plea hearing, it is reasonable to conclude that the outcome of a jury trial may have been different.

¶5. Taylor also contends that he received ineffective assistance of counsel because his trial counsel failed to properly investigate and present to the fact-finder possibly exculpatory evidence that he allegedly made counsel aware of before the plea hearing. According to Taylor, that evidence could have resulted in the dismissal of his charges. In response, the State predictably argues that Taylor has not met his burden of proving ineffective assistance of counsel.

¶6. To prove ineffective assistance of counsel, Taylor must establish that under the totality of the circumstances that

> (1) [his trial] counsel's performance was deficient and (2) the deficient performance deprived [him] of a fair trial. [It is imperative that Taylor] make both showings. With regard to the showing of deficient performance, [our] inquiry will focus on whether [trial] counsel's performance fell below an objective standard of reasonableness. The determination will consider whether the assistance was reasonable under all the circumstances seen from [trial] counsel's perspective at the time, and the prevailing professional norms for attorneys. [Trial] counsel is presumed competent, and [appellate courts] indulge[] a strong presumption that . . . counsel's conduct is within the wide range of reasonable professional assistance.

*Simon v. State*, 857 So. 2d 668, 682-83 (¶¶22-23) (Miss. 2003) (internal citations omitted).

¶7. In Taylor's plea petition, he stated that (1) there was "nothing wrong with [him] physically or mentally which might [have] impair[ed] [his] ability to read and understand th[e] petition or . . . to knowingly, willingly, and voluntarily enter" the guilty pleas; (2) although he was then "currently taking Lortab," he was "not under the influence of any drugs

3

or intoxicants or any other substance [that] might [have] impair[ed] [his] ability to understand th[e] petition or [plea] proceedings"; (3) in the presence of his counsel, he had read or had had read to him the plea petition, and his trial counsel had explained the petition to him and answered all of his questions; (4) his trial counsel had thoroughly discussed with him and advised him of all the aspects of his case, including the elements of each offense; and (5) he was satisfied with his trial counsel's representation.

¶8.     During the plea hearing, the following colloquy took place:

THE COURT:     Have you had an opportunity to discuss with your attorney all the facts and circumstances related to each of the crimes that you've offered to plead guilty to?

[TAYLOR:]       Yes, sir.

THE COURT:     Did your discussions with your attorney include any possible defenses that you may have to these charges? In other words, did you tell her everything that you know about these crimes[—the good, the bad, and the ugly?

[TAYLOR:]       Yes, sir.

****

THE COURT:     You've been represented by [trial counsel]. Are you satisfied with her representation?

[TAYLOR:]       Yes, sir.

THE COURT:     Do you have any complaints you wish to make about your attorney?

[TAYLOR:]       No, sir.

****

4

THE COURT: Do you have any questions about anything?

[TAYLOR:] No, sir.

**\*\*\*\***

THE COURT: [T]he bottom line is [that] it's not too late at this point to stop this hearing and proceed to trial. But it will be once I accept your pleas of guilty. So before I do that[,] I want to make sure this is what you want to do, Mr. Taylor.

[TAYLOR:] Yes, sir.

THE COURT: Do you want to plead guilty?

[TAYLOR:] Yes, sir.

THE COURT: Do you have any questions about anything?

[TAYLOR:] No, sir.

¶9. The record clearly belies Taylor's unsupported claims that he received ineffective assistance of counsel. During the plea hearing, Taylor stated that he was satisfied with his trial counsel's representation and that his trial counsel had adequately advised him of all aspects of his case, including his possible defenses. Also, during the plea hearing, although the circuit judge made it very clear to Taylor that he could end the hearing and proceed to trial, where he could present his theory of defense, Taylor insisted on entering the guilty pleas. Therefore, he cannot now legitimately argue that the likelihood of the dismissal of his charges was lowered simply because his trial counsel failed to take certain investigative action. In the same vein, Taylor cannot now, without any proof as to what the suggested

5

investigation by his trial counsel would have revealed, argue that his trial counsel's representation was unreasonable largely because counsel failed to conduct an investigation. Moreover, the record does not support a finding that Taylor's trial counsel did in fact fail to conduct an investigation into his case. This issue is without merit.

## II. Voluntariness of Guilty Pleas

¶10. Taylor summarily argues that "[t]he . . . physical trauma [resulting from the attack] combined with the [effects of the Lortab] given to [him] at the time of his plea hearing inhibited his ability to understand the nature of the rights he was abandoning." In response, the State points out that during the plea hearing, after Taylor informed the circuit judge that he had taken Lortab and after the judge inquired as to whether the drug was then affecting Taylor's ability to comprehend and understand the plea proceedings, Taylor indicated that it was not. Consequently, the State argues that Taylor's plea was voluntarily made.

¶11. A guilty plea binds the accused only when it is

> made knowingly and voluntarily. If the accused is made aware of the nature of the charges against him and the consequences of the plea, then the plea is deemed knowing and voluntary. . . . To require reversal on the grounds of an involuntary guilty plea, [the accused] must prove by a preponderance of the evidence that his plea was involuntary.

*Brown v. State*, 944 So. 2d 103, 105 (¶5) (Miss. Ct. App. 2006) (internal citations and quotation marks omitted).

¶12. During the plea hearing, the following colloquy also took place:

THE COURT:     Do you understand the minimum and maximum punishment that could be imposed for the crime that

6

you're offering to plead guilty to?

[TAYLOR:]        Yes, sir.

THE COURT:        For the sale of cocaine as charged in Count I, the minimum period of incarceration is zero years. The maximum period of incarceration is [thirty] years. The minimum fine is $5,000[,] and the maximum fine is [$1,000,000]. Do you understand that?

[TAYLOR:]        Yes, sir.

THE COURT:        For tampering with physical evidence as charged in Count II, the minimum period of incarceration is zero years. The maximum period of incarceration is two years. The minimum fine is zero dollars[,] and the maximum fine is $3,000. Do you understand that?

[TAYLOR:]        Yes, sir.

                                ****

THE COURT:        Do you have any prior felony convictions?

[TAYLOR:]        Yes, sir.

                                ****

THE COURT:        Do you understand that if you're convicted of this offense that it could result in a revocation in any of [the] cases that you are still on probation or parole?

[TAYLOR:]        Yes, sir.

                                *****

THE COURT:        Are you under the influence of any drugs or alcohol here today?

[TAYLOR:]        I -- I took a narcotic because my finger broke.

                                ****

THE COURT:        You've got some broken fingers and you've taken a pain

7

pill[?]

[TAYLOR:]      Yes, sir.

****

THE COURT:      You took that today?

[TAYLOR:]      Yes, sir.

THE COURT:      Well, did you -- that pain pill that you took, has it kept you from knowing and understanding and appreciating what you're doing here today?

[TAYLOR:]      No, sir.

THE COURT:      Did it keep you from knowing and understanding what you were doing when you went over your guilty-plea petition with your attorney?

[TAYLOR:]      No, sir.

THE COURT:      So you took it because of the pain in your hand and it's not affected your ability to know and understand and appreciate what's going on[.] Is that correct?

[TAYLOR:]      Yes, sir.

THE COURT:      Have you been treated for any mental disease or disorder?

[TAYLOR:]      No, sir.

THE COURT:      Did you read and sign your petition to enter a plea of guilty?

[TAYLOR:]      Sir, I didn't understand.  I didn't understand.

THE COURT:      I said ["]did you read and sign your petition [to enter a guilty plea?"]

8

[TAYLOR:]        Yes, sir.

                                    ****

THE COURT:       All right, Mr. Taylor, I'm going to ask you one more time. Did you read and sign [your] petition to enter a guilty plea?

[TAYLOR:]        Yes, sir.

THE COURT:       Do you understand everything that's in this petition?

[TAYLOR:]        Yes, sir.

                                    ****

THE COURT:       [W]hen you went over this petition, did you understand everything that was in the petition?

[TAYLOR:]        Yes, sir.

                                    ****

THE COURT:       Do you understand that by pleading guilty, you're waiving or giving up all of these rights and all of those rights that are set out in your petition?

[TAYLOR:]        Yes, sir.

THE COURT:       Are you telling me that that's what you want to you[?] [Do] you want to waive all these rights and proceed with your guilty plea?

                                    ****

THE COURT:       [Mr. Taylor,] are you pleading guilty because you're guilty and for no other reason?

[TAYLOR:]        Yes, sir.

9

During that colloquy, the circuit judge also informed Taylor of the possibility of enhanced sentencing as a subsequent drug offender and as a habitual offender.

¶13. The record reveals that before accepting Taylor's pleas, the circuit judge adequately informed him of the nature of the charges against him and the consequences of his pleas, and, even after that, Taylor stated that he still wished to plead guilty. So based upon the record, we do not find that his guilty pleas were not voluntarily given. Consequently, we affirm the circuit court's judgment denying and dismissing his PCR motion.

¶14. **THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT DENYING AND DISMISSING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, MAXWELL, FAIR, JAMES AND WILSON, JJ., CONCUR.**